# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KENNETH L. ANDERSON,

        Petitioner,

v.                                      ACTION NO.  2:16cv168

HAROLD W. CLARKE,
Director,

        Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

       Kenneth Anderson ("Anderson") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Anderson is a state prisoner presently incarcerated and serving a state sentence at Haynesville Correctional Center in Haynesville, Virginia. Having previously entered an *Alford*[1] plea to a charge of object sexual penetration, Anderson asserts that defense counsel provided ineffective assistance, in violation of the Sixth Amendment, by failing to file a motion to suppress his statements to law enforcement. For the reasons discussed below, and pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, it is hereby **RECOMMENDED** that respondent's motion to dismiss (ECF No. 5) be **GRANTED**, and the petition for a writ of habeas corpus (ECF No. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1] *Alford v. North Carolina*, 400 U.S. 25, 37–38 (1970) (finding no constitutional error in the acceptance of a guilty plea, notwithstanding an accused's refusal to "admit his participation in the acts constituting the crime," provided that the accused "intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt").

## I. STATEMENT OF THE CASE

**A.    Background**

### 1.    Kenneth Anderson's Offense, Plea, and Sentence

According to a joint stipulation of evidence[2] provided to the trial court in support of Anderson's no contest plea, the following events, among others, gave rise to his prosecution. ECF No. 7, Ex. 6. While in Virginia Beach on business, Anderson called his 24 year old daughter, K.A., who apparently resided there, and suggested they meet for dinner. ECF No. 7, Ex. 6 at 1. After picking up his daughter, they dined at a restaurant with K.A.'s cousin and Anderson became intoxicated. *Id.* Following dinner and a visit to the cousin's home, K.A. and the cousin assisted Anderson into his bed at his hotel room in Virginia Beach.[3] *Id.* Because the room had two beds, K.A. apparently decided to spend the night and seek a ride home from her father in the morning. *Id.* After falling asleep, K.A. later awoke to find her pants and underwear partially pulled down and her father lying naked on top of her. *Id.* At that time, her father was kissing her neck and breast and was digitally penetrating her. *Id.* To defend herself, K.A. began screaming and hitting her father and, during the ensuing altercation, Anderson struck and choked her and told her to stop yelling. *Id.* When K.A. tried to call her cousin using her cellular telephone, Anderson grabbed and threw the phone, and the line went dead shortly after the cousin answered the call. *Id.* In response to the sound of a commotion, a hotel clerk responded

---

[2] Beneath a sentence stating that **"WE AGREE THAT THIS WOULD BE THE COMMONWEALTH'S EVIDENCE[,]"** Anderson, defense counsel (Lawrence H. Woodward, Jr., Esquire), and the prosecutor each signed this stipulation. ECF No. 7, Ex. 6 at 2.

[3] At Anderson's sentencing hearing, K.A.'s testimony about the events in question differed from the stipulation as to certain details which are not material to either the offense charged or this ruling. For example, K.A. testified that a friend of her cousin's joined the group for dinner and that this friend also assisted in getting Anderson back to the hotel room. Sentencing Transcript 13–14, ECF No. 7, Ex. 8.

to the room and, upon entry, found K.A. crying in a corner of the room and observed a naked Anderson, who stated "I didn't rape her." *Id.* at 1, 3.

Virginia Beach police officers responded to the scene and Anderson made statements to detectives, first at the hotel, and then later at the police station. *Id.* at 3–4. A typed summary of both of Anderson's statements to the detectives was attached to and made a part of the stipulation of the evidence, which also briefly summarized the typed statements. *Id.* The police official who typed the statements reported that the first interview was "non–custodial" and began at approximately 3:30 a.m. *Id.* at 3. In the first statement, when asked why a hotel clerk came to knock on his door and called the police, Anderson advised that he had been visiting from out of town and had dinner and drinks with his daughter and his nephew and how, although his memory was poor, he knew he had been assisted by his daughter and someone else in returning to the hotel room. *Id.* When asked about what later transpired with his daughter, Anderson stated that he "got into her bed while she was sleeping." *Id.* He further advised that he began kissing her neck and slid his hand down the back of her pants and then moved to the front, rubbing and digitally penetrating her. *Id.* Anderson stated that, after his daughter realized what was happening, she told him to stop and began cursing loudly and asked why he did it. *Id.* In response, Anderson advised that he tried to make her be quiet by putting his hand over her mouth. *Id.* When asked if he choked her, Anderson stated his hands "could have gone down that far but . . . she was scaring me" and he "didn't mean to hurt her." *Id.* Although Anderson denied touching or kissing K.A.'s breasts or pulling down her pants, he stated that "she looks like her mother to me and I've thought about her sexually before." *Id.*

Following this initial statement, the Virginia Beach police officers apparently arrested Anderson and transported him to the police station, where he made a second statement at

3

5:40 a.m., after having been read *Miranda* warnings from a pre–printed card. *Id.* at 4. The typed statement characterizes this second interview as "custodial." *Id.* at 4. When asked if there was anything else he needed to tell the police, Anderson inquired about what his daughter had told the police. *Id.* When advised that her statement differed in some respects from his, Anderson stated that "I didn't do anything I haven't told you." *Id.* He then recounted the events stating that, after putting his hand down the back of K.A.'s pants, he re–positioned his hand towards the front, and he rubbed and digitally penetrated her. *Id.* He denied raping K.A. or touching her breasts in any way. *Id.*

Kenneth Anderson's prosecution and sentencing took place in the Circuit Court for the City of Virginia Beach (the "trial court") before Judge William R. O'Brien. Following Anderson's arrest on April 25, 2012, a grand jury indicted him on August 6, 2012, on one count of object sexual penetration in violation of § 18.2-67.2 of the Code of Virginia.[4] On November 19, 2012, Anderson entered an *Alford* plea and pled no contest to the charge. Plea Transcript ("Plea Tr.") 2–3, ECF No. 7, Ex. 1. In conjunction with the plea, Anderson completed and signed, with defense counsel's assistance, a document entitled "QUESTIONS ASKED THE DEFENDANT BEFORE THE COURT ACCEPTS A PLEA OF NO CONTEST." ECF No. 7, Ex. 7. In this document, Anderson stated, among other things, that: (1) he understood the charge against him and discussed with defense counsel the elements the government would have to prove to convict him of the charge; (2) he understood that the charge carried a maximum punishment of life in prison; (3) he had adequate time to discuss possible defenses to the charge with defense counsel and understood that by pleading no contest he was waiving his right to defend himself; (4) following such discussion, he elected to enter a no contest plea; (5) he

---

[4] The statutory penalty for this violation is "confinement in the state correctional facility for life or for any term not less than five years." Va. Code Ann. § 18.2-67.2(B).

desired to enter such a plea because he understood the government could prove facts sufficient to convict him; and (6) he was satisfied with the services provided by defense counsel. *Id.*

Anderson provided the same or similar answers during the oral plea colloquy. In response to Judge O'Brien's questions, Anderson stated, among other things, that: (1) he understood that the trial court intended to treat his plea of no contest as "for all intents and purposes . . . as a guilty plea," Plea Tr. 3; (2) he and defense counsel reviewed the written list of questions described above, Plea Tr. 3; (3) he understood the charge against him and discussed with defense counsel the elements the government would be required to prove to establish his guilt, Plea Tr. 4–5; (4) he had sufficient time to discuss possible defenses to the charge with defense counsel and also reviewed whether to plead guilty, not guilty, or to enter an *Alford* plea, Plea Tr. 5; (5) after such discussion, he freely and voluntarily elected to enter an *Alford* plea, Plea Tr. 5; (6) he agreed that the government would offer evidence supporting, and could prove the facts set forth in, the stipulation and was entering an *Alford* plea because there was sufficient evidence to convict him of the charge, Plea Tr. 5, 8; (7) he understood that his entry of an *Alford* plea constituted a waiver of his right to defend himself against the charge, which he acknowledged carried a maximum punishment of life in prison, Plea Tr. 6–7; and (8) he was entirely satisfied with the services of retained defense counsel, Plea Tr. 7. On the basis of Anderson's answers and the documents submitted in conjunction with the plea, the trial court determined that Anderson's plea was voluntary, made with a full understanding of the nature and consequences of the plea, and supported by an independent basis in fact. Plea Tr. 8, 12. Therefore, the trial court set a date for sentencing, directed that a presentence report be prepared, and ordered that Anderson undergo a psychosexual evaluation. Plea Tr. 9–12.

Anderson's sentencing occurred on April 30, 2013. Sentencing Transcript ("Sent. Tr.")
1, 3, ECF No. 7, Ex. 8. At that hearing, the trial court received, and the parties discussed, the
psychosexual evaluation of Anderson and a letter report concerning Anderson's treatment at
Dominion Behavioral Health Care that was supplied by the defense, as well as the presentence
report. Sent. Tr. 3–5. K.A. also testified at the sentencing about her family, her relationship with
her father over the years, and the impact of the crime upon her. Sent. Tr. 6–22. Although K.A.
advised that she wanted to have no further contact with her father, she also told the court that she
had a good relationship with her father growing up, he was supportive and had recently provided
financial support, she still loved him, and she felt sad because she did not "want a life for him in
prison." Sent. Tr. 8, 11, 19, 20–21.

Defense counsel then argued for a sentence "well below the low end of the guidelines,"
which called for a minimum sentence of seven years. Sent. Tr. 25, 29. In support thereof,
defense counsel emphasized: (a) the 55 year old Anderson's lack of a prior criminal history; (b)
his history of having been a victim of sexual abuse; (c) his low risk of recidivism according to
the psychosexual report; (d) his progress in counseling over the preceding year; (e) the role that
alcohol played in the crime; (f) Anderson's accomplishments at work and as a father; and (g)
Anderson's acceptance of responsibility for the offense, as evidenced by his prompt confession
to police and by his "never [having] done anything within the court system other than try to
make it easy for his daughter," such as by waiving preliminary hearing and pleading "guilty."
Sent. Tr. 22–25. The prosecutor argued for a sentence at the low to mid–range of the applicable
sentencing guideline.

Anderson elected to speak to the court before imposition of the sentence. In doing so, he
apologized to his daughter "for imposing behavior that time a year ago" and said that he took

6

"full responsibility" for what occurred. Sent. Tr. 29. He stated that he hit "rock bottom" the night of the incident, should have sought alcohol counseling much sooner and had been in treatment since that time, and that he did not "know what happened." Sent. Tr. 30. After also apologizing to his wife, Anderson concluded by saying that "all I want to do is take care of my daughter. I apologize. I want to make things right with her. I'll do whatever she needs me to do." Sent. Tr. 31.

After hearing from Anderson, Judge O'Brien sentenced him to twenty years of incarceration, with all but seven years suspended, to be followed by an indeterminate period of supervised probation during which he was ordered to remain on good behavior for thirteen years. Sent. Tr. 32; ECF No. 7, Ex. 3 at 1–2.

### 2. Anderson's Direct Appeals

Anderson appealed neither his conviction nor his sentence to the Court of Appeals of Virginia or the Supreme Court of Virginia. ECF No. 7, Ex. 4 at 2.

### 3. Anderson's State Collateral Review

On May 8, 2014, Anderson timely filed a petition for a writ of habeas corpus in the Circuit Court for the City of Virginia Beach ("habeas court"). ECF No. 7, Ex. 4. In this petition, Anderson claimed that defense counsel rendered ineffective assistance by failing to file a pre-trial motion seeking to suppress all of Anderson's statements to the police and that, if counsel had successfully so moved, he would have chosen to go to trial. *Id.* at 7.

By written opinion dated March 4, 2015, the habeas court rejected this claim. ECF No. 7, Ex. 5. Prior to addressing Anderson's claim, the habeas court rejected Anderson's motion to quash or strike an affidavit from trial counsel submitted as an exhibit to the respondent's motion to dismiss Anderson's petition. *Id.* at 2–6. This sworn affidavit (the "Woodward affidavit")

7

from Anderson's trial counsel, Lawrence H. Woodward, Jr., Esquire, responded to the claim raised in the petition. Resp't's Mot. to Dismiss State Habeas Pet., Ex. 3. Finding that the affidavit was relevant and admissible, the habeas court exercised its statutory discretion to admit and consider the affidavit as "substantive evidence" and rejected petitioner's argument that its submission was contrary to law and in violation of Virginia's Rules of Professional Conduct. *Id.* at 2–3 (citing Va. Code. Ann. § 8.01-660) (authorizing a court considering a habeas petition to accept "affidavits of witnesses . . . as evidence").

In pertinent part, the Woodward affidavit indicates that "Anderson's approach to his case from the outset was to accept responsibility for his actions towards his daughter." Resp't's Mot. to Dismiss State Habeas Pet., Ex. 3 at 1. The affidavit recites that Anderson "repeatedly and consistently stated that he was responsible for the assault on her" and that he "consistently indicated that he did not want to call his daughter a liar regarding what occurred." *Id.* at 1–2. Further, as a result of "speaking to [] Anderson and reviewing the facts of the case, [trial counsel opined] that there was no factual or legal basis to suppress his statement." *Id.* at 1. In view of the above, and having been "fully advised . . . of the consequences of a guilty plea" and of his options, counsel advised that Anderson "chose to freely and voluntarily enter[] a guilty plea." *Id.* at 2. At the same time, Anderson agreed to pursue a defense strategy of attempting "to have his daughter . . . be as favorable to him as possible at sentencing;" establishing the significant role that alcohol played in his actions; and attempting to mitigate his misconduct by seeking meaningful treatment and counseling for alcohol, mental, and emotional issues before sentencing. *Id.* at 1.

After accepting the Woodward affidavit into the record, the habeas court identified the ineffective assistance standard applicable to Anderson's claim, noting that he must establish that

defense counsel's conduct fell below an objective standard of reasonableness and that he suffered prejudice as a result. ECF No. 7, Ex. 5 at 6 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). With respect to the prejudice prong, the habeas court noted that, because of Anderson's guilty plea, a finding of prejudice required Anderson to establish the existence of a reasonable probability that, "'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

In analyzing counsel's performance, the habeas court first ruled that Anderson's statements, among others, at the plea proceeding that he was "entirely satisfied with the services of defense counsel and discussed all possible defenses" before electing to enter his plea, "conclusively establishes the adequacy of counsel'[s] . . . representation," inasmuch as Anderson failed to offer a valid reason for now contesting such statements. *Id.* at 7–8 (citing *Anderson v. Warden*, 281 S.E.2d 885, 888 (Va. 1981)).[5] The habeas court also rejected the deficient performance claim by finding that the record established Anderson's agreement with the strategy employed to defend the case; that is, to accept responsibility for the sexual assault, spare his daughter the indignity of a preliminary hearing and trial, and develop evidence in mitigation for sentencing. *Id.* at 8–9. The habeas court ruled that, having agreed to this strategy, Anderson "cannot now use its implementation as the basis for an ineffective assistance claim," predicated upon counsel's failure to take action (filing a suppression motion) inimical to it. *Id.* at 10–11 (citations omitted). Finally, the habeas court concluded, after considering what it characterized

---

[5] After ruling that the Supreme Court of Virginia's decision in *Anderson* barred consideration of Anderson's ineffective assistance claim due to Anderson's failure to provide a valid reason why his plea statements were not binding, the habeas court nevertheless proceeded to evaluate his claim on the merits. Recognizing that the Fourth Circuit has expressed doubt about whether the ruling in *Anderson* constitutes an adequate and independent state–law basis for procedural default, *see Royal v. Taylor*, 188 F.3d 239, 247–48 (4th Cir. 1999), the respondent has expressly declined to rely on this state procedural bar in this case. ECF. No. 7 at 9.

as Anderson's unsupported and self–serving statements regarding the circumstances of his questioning by police, that an objectively reasonable defense attorney could have determined that no grounds existed to suppress Anderson's statements. *Id.* at 11–16.

Turning to the second prong of analysis, the habeas court also concluded that any decision by Anderson to forego a plea to the charge and go to trial would not have been objectively reasonable for several reasons. First, it noted that, as a matter of Virginia law, voluntary intoxication was no defense to a sexual crime of this nature. *Id.* at 17. Second, it rejected the notion, discussed in an exhibit attached to Anderson's petition, that Anderson's reported history, after excessive drinking, of engaging in similar behavior with a former wife somehow gave rise to a viable defense of mistakenly engaging in such conduct with his non–consenting daughter. *Id.* at 18. Third, it rejected the notion that the daughter's unexpected presence in the hotel room on the night in question created any issue about whether she consented to Anderson's actions. *Id.* Fourth, the court reviewed the evidence against Anderson, alternately with and without considering his statements to police, and characterized it as "overwhelming," in the first instance, and "strong" in the latter. *Id.* at 18–19. Finally, the court examined the results of the strategy employed by defense counsel and characterized the strategy as "reasonable" and the outcome as "extremely favorable." *Id.* at 19. In this regard, the court credited defense counsel's assessment that, if Anderson had taken the case to trial, he would have fared worse. *Id.*

Anderson sought to appeal the habeas court's ruling to the Supreme Court of Virginia, which refused the petition for appeal on January 14, 2016. *Anderson v. Clarke*, Record No. 150874 (Jan. 14, 2016). The Supreme Court of Virginia also denied Anderson's petition to set

aside its January 14, 2016 judgment and to rehear the matter. *Anderson v. Clarke*, Record No. 150874 (March 25, 2016).

**B.     Anderson's Federal Habeas Filing and the Claim Alleged**

On April 5, 2016, Anderson timely filed the section 2254 petition now pending before the Court. ECF No. 1. On May 13, 2016, Harold W. Clarke, Director, Virginia Department of Corrections ("Director"), filed an answer, as well as a motion to dismiss the petition. ECF Nos. 5–7.

Before this Court, Anderson renews the claim he presented to the Circuit Court for the City of Virginia Beach and the Virginia Supreme Court; namely, that he is being held in custody in violation of his constitutional rights because defense counsel rendered ineffective assistance by failing to file a motion to suppress his statements to police on April 25, 2012.[6]

## II. ANALYSIS

**A.     Exhaustion**

Before addressing the merits of the habeas petition, the Court must determine whether Anderson exhausted his remedies in state court. *See* 28 U.S.C. § 2254(b); *Rose v. Lundy*, 455 U.S. 509, 515 (1982) (noting that the exhaustion doctrine ensures that state courts have a meaningful opportunity to consider allegations of constitutional violations before presentation of such claims to a federal court). The exhaustion requirement is satisfied when the "essential legal

---

[6] Although Anderson specifies only this single claim at page 10 of his petition, ECF No. 1 at 10, elsewhere he specifies subsidiary omissions by trial counsel that reportedly caused Anderson to make an uninformed decision to enter a plea, rather than take the case to trial. Anderson identifies these subsidiary omissions as counsel's failure: (1) to consider a motion to suppress; (2) to investigate the circumstances surrounding Anderson's statements to police; (3) to discuss with Anderson the advisability of filing a motion to suppress; and (4) to discuss with or advise Anderson about the impact on the case if the trial court suppressed his statements to police. Pet'r's Resp. to Resp't's Answer and Mot. to Dismiss at 4. Because, as discussed below, the Court rules that the habeas court reasonably determined that Anderson failed to establish prejudice, no need exists to address these grounds undergirding Anderson's claim.

theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court." *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991) (citing *Picard v. Connor*, 404 U.S. 270, 275–76 (1971)); *see also Skipper v. French*, 130 F.3d 603, 610 n.4 (4th Cir. 1997). Exhaustion may be achieved either through direct appeal or in post–conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)); *Skipper*, 130 F.3d at 610 n.4.

Anderson raised the claim noted above before the Supreme Court of Virginia, which refused his petition appealing the ruling of the habeas court. *Anderson*, No. 150874 at 1. Accordingly, and as conceded by the Director, Anderson's claim is legally exhausted.

**B.      Deference to State Court Decisions**

When a claim has been properly exhausted and adjudicated on the merits in state court, this Court assesses the state court adjudication pursuant to 28 U.S.C. § 2254(d), rather than directly considering the merits of such a claim. Section 2254(d) provides that a federal court may not grant relief on any claim that was adjudicated on its merits in state court, unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" clearly established federal law when a state court applies a rule different from the governing law articulated by the Supreme Court or arrives at a conclusion opposite that of the Supreme Court on materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted); *Williams v. Taylor*, 529 U.S. 362, 412–13

12

(2000). A state court decision constitutes an "unreasonable application" of federal law when the court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the case. *Williams*, 529 U.S. at 413; *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that an unreasonable "application of clearly established law must be objectively unreasonable," rather than simply "incorrect or erroneous"). Stated another way, a "prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Pursuant to this deferential standard of review, "state–court judgments must be upheld unless, after the closest examination of the state–court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 389.

## C.      Ineffective Assistance of Counsel

To review a claim of ineffective assistance of counsel, the Court must apply "a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, __ U.S. __, 134 S. Ct. 10, 13 (2013) (quotation omitted). The applicable standard set forth in *Strickland* requires a petitioner to show that his defense counsel provided assistance that (1) fell below an objective standard of reasonableness and (2) prejudiced petitioner as a result. *Strickland*, 466 U.S. at 700. To establish that counsel's performance fell below an objective standard of reasonableness, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In doing so, petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional

assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice in a matter involving a guilty plea, the Supreme Court indicated that *Strickland's* second prong requires a showing that "there is a reasonable probability that, but for counsel's errors, [a petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S at 59. Rather than conducting this analysis simply on the basis of a petitioner's claim that he would not have pled guilty if counsel had performed better, *see United States v. Mora–Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995) (noting that such a claim is "not necessarily conclusive"), a court must conduct "an objective inquiry [which is] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citations omitted) (citing *Hill*, 474 U.S. at 59–60). This inquiry necessitates that a court examine the facts and circumstances surrounding a petitioner's plea, including any sentencing benefits resulting therefrom, as well as the likelihood of a conviction if the petitioner had elected to go to trial. *Id.* at 369–70; *see United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012) (noting that a court must be convinced that "proceeding to trial would have been objectively reasonable in light of all the facts").

Notably, when conducting such an inquiry, any statements made by the defendant, defense counsel, and prosecutor during the plea hearing, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). "Absent clear and convincing evidence to the contrary, [a petitioner] is bound by the representations he made during the plea colloquy." *Walton v. Angelone*, 321 F.3d 442, 462 (4th Cir. 2003) (citing *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992); *see also Little v. Allsbrook*, 731 F.2d 238, 239–40 n.2

(4th Cir. 1984) (noting that "statements . . . made while under oath" at a plea hearing are not simply "empty gestures," but rather are binding and of "considerable importance" absent "clear and convincing evidence to the contrary").

## D. Conclusions of Law

A court applying the *Strickland* test may analyze either prong first and need not analyze both prongs of the test if a petitioner makes "an insufficient showing on one." *Strickland*, 466 U.S. at 697. When, for example, a petitioner cannot satisfy his burden of demonstrating prejudice, a "court need not consider the performance prong." *Fields*, 956 F.2d at 1297 (citation omitted). Because this is just such a case, the Court analyzes only the prejudice prong below.

The habeas court concluded that any decision by Anderson to forego a plea and to go trial would not have been objectively reasonable because Anderson had no viable defenses, the evidence against him was either "overwhelming" or "strong" (depending upon whether his statements to police were admitted), and defense counsel proposed a reasonable strategy, which ultimately led to a favorable outcome. ECF No. 7, Ex. 5 at 16–19. Anderson contests this analysis claiming that the statements attributed to him by the Virginia Beach police detectives "were[,] in large part[,] the reason [he] waived his right to trial." ECF No. 1 at 15. Anderson argues that, if a motion to suppress had been filed, his statements to police would have been suppressed. *Id.* If this had occurred and because he viewed "his statements [as] the most problematic part of the case," Anderson claims he would have taken the case to trial "because there was evidence in his favor [and] he had a reasonable defense to the charge." *Id.* With respect to such defenses, Anderson alleges that: (1) he "repeatedly asserted to the detective and others" that he mistakenly believed that the person in the other bed was his wife; (2) he was intoxicated both from drinking alcohol and from smoking an illicit drug at his nephew's home

before returning to the hotel; (3) his daughter was "not supposed to be staying the night in the hotel room;" (4) his ex–wife reported that Anderson had a history of engaging in similar behavior when intoxicated; and (5) he "denied . . . striking or choking" his daughter, but only "tried to hold his hand over her mouth because she was screaming hysterically." *Id.*

Giving due consideration to all of the circumstances, the Court concludes that the habeas court's ruling[7] that Anderson failed to establish prejudice was neither contrary to nor unreasonably applied clearly established law nor rested upon an unreasonable determination of the facts for the following reasons. First, it is undisputed that the habeas court correctly identified the law applicable to ineffective assistance of counsel claims and did not arrive at a decision contrary to that of the Supreme Court on materially indistinguishable facts.

Second, Anderson indisputably faced a serious charge which, upon conviction, carried a maximum penalty of life imprisonment. Va. Code Ann. § 18.2-67.2. The gravity of this potential penalty meant that the risks involved in taking such a case to trial and losing were high. This is particularly true in this matter because it is undisputed that Anderson committed a non–consensual, sexual act upon his daughter, while she slept. While Anderson raises issues concerning the circumstances giving rise to that act, the undisputed nature of the act, as well as the fact that it involved a family member, and the potential penalty involved, all counseled strongly in favor of considering whether an alternative strategy built around a plea, counseling, and treatment stood a greater chance of leading to a favorable outcome.

---

[7] The Court will "look through" the Supreme Court of Virginia's denial of Anderson's state habeas petition for appeal and evaluate the reasoned decision of the Circuit Court for the City of Virginia Beach. *Grueninger v. Dir., Va. Dep't. of Corr.*, 813 F.3d 517, 525 (4th Cir. 2016); *see Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

Third, any objective assessment about whether to go to trial must consider both the strength of the government's evidence, as well as the viability of any defenses to the charge. Putting aside Anderson's statements to the police for a moment, the government's evidence at trial would have included testimony from K.A., her cousin, and a hotel clerk about the following events, among others. K.A. would have testified that she awoke in her bed in the middle of the night to find that her pants and underwear had been partially pulled down and her father lying naked on top of her, kissing her neck and breast, and using his fingers to digitally penetrate her. In response, K.A. began screaming and used physical force (hitting and pushing) to get her father off of her. Anderson responded with physical force against his daughter and, as she tried to gather up her belongings, choked her to prevent her from yelling and attracting attention to events in the hotel room. When K.A. telephoned her cousin to seek assistance, the cousin answered and could hear K.A. screaming, but was unable to speak to her because Anderson grabbed the cellphone out of K.A.'s hands, threw it, and the line went dead. When the cousin tried to return the call, no one answered. In response to the commotion, the hotel clerk entered the room and found K.A. crying in the corner of the room and observed a naked Anderson, who stated "I didn't rape her."

In conjunction with his plea, Anderson agreed that the government could prove these facts and, in his habeas petition, he only disputes that he actually struck or choked K.A.[8]  Plea

---

[8] Anderson's habeas petition generally "denies the accuracy of the detective's recitation" of his statements to police, ECF No. 1 at 15, but, with one exception, does not contest the accuracy of the events recited above. The one exception is that Anderson denies "striking or choking [K.A.], but says that he tried to hold his hand over her mouth because she was screaming hysterically." *Id.* at 17.  This differs significantly from Anderson's statement to police, in which he acknowledged that, in putting his hands over K.A.'s mouth to quiet her, his hands might have moved to K.A.'s neck area, but disclaimed any intent to hurt her. ECF No. 7, Ex. 6 at 3. For her part, K.A. elaborated on her injuries at sentencing stating that, "I wouldn't say he full on choked me, but I did have bruises around my neck. And my left ear . . . got busted open" as a result of a

Tr. 8. Thus, a reasonable interpretation of the government's evidence is that it would show that: (1) Anderson engaged in object sexual penetration of his sleeping daughter; (2) when awakened, she had to use physical force to extricate herself from his depredations; (3) he responded with physical force, demonstrably injured his daughter, and by such force attempted to prevent her from loudly calling attention to his misconduct and/or from seeking the assistance of third parties, one of whom would confirm receiving such a call at the time; and (4) another third party who responded promptly to the scene found K.A. in a state of distress, observed Anderson in a compromising position, and heard him make a statement which suggested that, in fact, some kind of sexual activity had occurred. This is a far cry from a "he said, she said" kind of dispute, with no independent witnesses available to testify about the events in question.

Moreover, notwithstanding his current failure to take issue with most of the evidence discussed above, Anderson faced at least two impediments to doing so at any trial. First, as noted in the statement of facts offered in support of the plea, ECF No. 7, Ex. 6 at 1, and conceded in Anderson's petition, he was intoxicated (and apparently under the influence of illegal narcotics) on the night in question. Therefore, to the extent he might seek to offer a counter-narrative to such events, he was vulnerable to cross-examination about his ability to perceive and remember the events. Second, assuming for the sake of argument that both of his statements were suppressed, Anderson's ability to present any counter-narrative to this version of events would also be handicapped by the prosecution's ability to use one or both of his statements to police to impeach any testimony at odds therewith. *See United States v. Gullett*, 75 F.3d 941, 946 (4th Cir. 1996) (noting that a voluntary statement obtained in violation of *Miranda* may be used during cross-examination for impeachment, as the "'shield provided by *Miranda*

---

blow from Anderson. Sent. Tr. 17. Also, although not discussed in the petition, Anderson denied touching K.A.'s breasts in his statements to police. ECF No. 7, Ex. 6 at 3–4.

cannot be perverted into a license to use perjury' and avoid 'the traditional truth-testing devices of the adversary process'") (quoting *Harris v. New York*, 401 U.S. 222, 225–26 (1971)); *Oregon v. Hass*, 420 U.S. 714, 720 (1975).

Additionally, the potential trial defenses Anderson posits he would assert do little to change his likelihood of success. Anderson's claim that this was a case of mistaken identity and that he thought he was dealing with his wife fails for at least three reasons. First, as noted in his petition, Anderson's wife, who originally was supposed to have joined him at the hotel earlier that same day, "got held up at work in Richmond and told [Anderson] that she would" not arrive until the next morning. ECF No. 1 at 16. Therefore, even if Anderson had been confused about who was present in the second bed in the hotel room, he possessed actual knowledge that it was not going to be his wife.[9] Second, the offense charged specifies that "[a]n accused shall be guilty of . . . object sexual penetration if he or she penetrates the labia majora . . . of a complaining witness, **whether or not his or her spouse**," and such "act is accomplished against the will of the complaining witness." Va. Code Ann. § 18.2-67.2(A)(2) (emphasis added). Thus, even if Anderson thought he was dealing with his wife, that would be no defense to the charge when, as here, he acted against the will of the complaining witness. Third, had Anderson testified to such a defense, he would have been subject to cross–examination for giving police a different explanation; namely, that he had sexual thoughts about his daughter and noted that she looked like her deceased mother and his ex–wife. ECF No. 7, Ex. 6 at 1, 3; Sent. Tr. 6–8 (K.A. testified that her mother had divorced Anderson and later passed away when K.A. was 15 years old).

---

[9] Anderson's related claim that K.A. was "not supposed to be staying the night in the hotel room" likewise misses the mark. ECF No. 1 at 16. As the habeas court rightly noted, her presence there, expected or otherwise, in no way constituted consent to Anderson's sexual advances. ECF No. 7, Ex. 5 at 18.

Anderson's related claim that he was too intoxicated to know what he was doing is also no defense. In Virginia, aside from the "only exception" for cases involving proof of deliberation and premeditated murder, the general rule is that "voluntary intoxication is not an excuse for any crime." *Swisher v. Commonwealth,* 506 S.E.2d 763, 772 (Va. 1998) (citations omitted); *see also Jordan v. Commonwealth*, 25 S.E.2d 249, 250 (Va. 1943) (finding that "[v]oluntary drunkenness," even if it may have "produced temporary insanity," is not a defense to attempted rape). In the absence of citation to contrary authority in Anderson's petition and because the crime of object sexual penetration requires no similar proof of specific intent or deliberation, the general rule governs here. *See Viars v. Commonwealth,* 2005 Va. App. LEXIS 147, at *5–6 (Va. App. Apr. 12, 2005) (holding that "a plain reading of the statute establishes that the Code merely requires proof of penetration of a named sexual part, not proof of lascivious intent").

Next, the fact that Anderson previously engaged in similar conduct when intoxicated, as evidenced by an ex-wife's written statement, ECF No. 1, Ex. 1, also does little to blunt the likely prosecution evidence described above. Nor does any such evidence appear to be probative of the issue of whether Anderson's conduct, on the night in question, was "accomplished against the will of the complaining witness." Va. Code Ann. § 18.2-67.2. Whether Anderson's ex–wife received and/or consented to similar conduct in the past simply has no bearing on this question. Significantly, the ex-wife's statement also indicates that she brought this information to defense counsel's attention well before Anderson decided to enter a plea to the charge. ECF No. 1, Ex. 1 at 1. In light of this and Anderson's statements at the time of the plea that he and counsel discussed any defenses to the charge, it appears that, in entering a no contest plea, Anderson

concluded that this was not a worthwhile trial defense. The Court, likewise, finds no basis for concluding otherwise now.

For all these reasons, the habeas court reasonably and accurately assessed the government's case against Anderson to be a "strong" one, even in the absence of police testimony about Anderson's statements to them.

Fourth, to have any prospect of succeeding at trial, Anderson needed to successfully move to suppress not just one, but both of his separate confessions (one at the hotel and another at the police station) to his object sexual penetration of his daughter. To challenge the version of events giving rise to his plea, Anderson likely would have had to supply his own narrative concerning the circumstances of his interactions with and statements to police. In doing so, and leaving aside any potential credibility issues, Anderson would have confronted the same challenge (discussed above) that his intoxication presented to his reliability as a witness. Stated another way, if Anderson was unable to distinguish between his 24 year old daughter and his current wife on the night in question, he also faced a substantial hurdle in challenging the version of events supplied by two detectives and possibly another police officer.

Anderson faced another problem with respect to his second confession at the police station.[10] Suppressing that statement requires, among other things, proof that Virginia Beach detectives improperly used a two–step interrogation strategy of the kind rejected by the Supreme Court in *Missouri v. Siebert,* 542 U.S. 600 (2004). In *Siebert,* a police officer deliberately decided to use an interrogation technique whose object, a plurality of the Court found, was to "render *Miranda* warnings ineffective." *Siebert,* 542 U.S. at 611. Specifically, the officer first

---

[10] Due to the Court's ruling on Anderson's claim of prejudice and the analysis discussed below concerning his second statement, no need exists to delve into whether the circumstances attendant to Anderson's first statement to police at the hotel room were custodial.

questioned a suspect without giving the warnings, on purpose and to facilitate obtaining incriminating statements, then, after receiving the same, he recited the *Miranda* warnings, and repeated questions previously asked until the suspect repeated the answers previously given. *Id.* at 605–06. The five justices comprising the majority rejected this approach and concluded that the postwarning statements were inadmissible. *Id.* at 604, 617.

In the absence of a rationale agreed to by five justices in *Siebert*, the Fourth Circuit ruled that Justice Kennedy's concurring opinion constituted the holding of the Supreme Court, because it constituted the position of the Court on the narrowest grounds. *United States v. Mashburn*, 406 F.3d 303, 308–09 (4th Cir. 2005). Thus, *Siebert* holds that, when police deliberately set out to withhold *Miranda* warnings until after securing a confession, later statements following proper warnings must be suppressed unless "curative" measures were taken to "ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning." *Siebert*, 542 U.S. at 621–22 (noting factors to be considered include whether a "substantial break in time and circumstances" occurred between the two statements or whether the suspect was told that the prior statement was likely inadmissible) (Kennedy, J., concurring). Absent the use of deliberately coercive or improper tactics like those identified in *Siebert,* however, the admissibility of a second statement following proper *Miranda* warnings is governed by the voluntariness standard set forth in *Oregon v. Elstad*, 470 U.S. 298, 310 (1985). *Id.* at 622; *see also Mashburn*, 406 F.3d at 309 (noting that "*Elstad* instructs that 'absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion' as to any subsequent, postwarning statement.").

The significance of *Siebert*, from Anderson's perspective, is that suppression of his second statement, following receipt of *Miranda* warnings, would likely turn upon whether the Virginia Beach detectives who questioned him employed a two–step interrogation technique in a calculated way so as to render their later *Miranda* warnings impotent. Although Anderson invites the Court to speculate on this point, the record contains no evidence that this, in fact, occurred. *Cf. Mashburn*, 406 F.3d at 309 (noting that "the district court found no evidence that the agents' failure to convey *Miranda* warnings . . . was deliberate or intentional"). To the contrary, the evidence suggests that, while sorting through a family quarrel of an unusual nature in a hotel room, involving at least one person who may have been intoxicated, the detectives developed information, confirmed by Anderson himself, that gave them probable cause to arrest and transport him to the police station. Although such matters need not be decided here, the point is that Anderson's prospects for suppressing his second confession were uncertain, at best. Thus, any reasonable defendant would have to carefully weigh this factor in deciding whether to enter a plea or to go to trial.

Finally, facing a maximum sentence of life in prison upon conviction and a difficult set of facts, it is apparent that Anderson, whose daughter testified positively about him at sentencing, received a favorable outcome from the trial court, which ultimately suspended 13 years of his 20 year sentence of incarceration.

In summary, and taking into account the strength of the prosecution's case, the possible defenses available to Anderson, the likelihood of success had the defense filed suppression motions, and the favorable disposition obtained following the guilty plea, the Court finds that the habeas court reasonably concluded that it would not have been objectively reasonable to proceed

to trial and Anderson failed to show any prejudice resulting from any failure to file suppression motions.

## III. RECOMMENDATION

Based upon the foregoing, and **FINDING** no indication from the record that the habeas court's adjudication on the merits was clearly contrary to, or involved an unreasonable application of, clearly established federal law, or that its decision resulted from an unreasonable determination of the facts, the Court **RECOMMENDS** that the Director's motion to dismiss (ECF No. 5) be **GRANTED**, and that Anderson's petition for a writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE**.

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that, pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. A party may respond to any other party's objections within fourteen days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules).

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

24

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
United States Magistrate Judge

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
September 20, 2016

25